IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**PEYTON HOPSON,**                          Case No. 5:16 CV 1867

    Petitioner,                          Judge Sara Lioi

    v.                          Magistrate Judge James R. Knepp, II

**MICHELLE MILLER, Warden,**

    Respondent.                          REPORT AND RECOMMENDATION

## INTRODUCTION

*Pro se* Petitioner Peyton Hopson ("Petitioner"), a prisoner in state custody, filed a petition

seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden

Mary Potter[1] ("Respondent") filed a Return of Writ (Doc. 7) with attached exhibits (Docs. 7-1 &

7-2), and Petitioner filed a Traverse (Doc. 13).[2] Respondent subsequently filed additional trial

transcripts. (Doc. 20). The district court has jurisdiction under § 2254(a). This matter has been

referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2).

(Non-document entry dated August 8, 2016). For the reasons discussed below, the undersigned

recommends the Petition be denied in its entirety.

## FACTUAL BACKGROUND

Factual findings of state courts of appeals are presumed correct unless a petitioner rebuts

them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d

---

1. At the time of Respondent's filing, Mary Potter was the Warden of the Belmont Correctional
Institution in St. Clairsville, Ohio where Petitioner is currently incarcerated. As of October 2017,
David Gray is the Warden. *See* Doc. 20, at 1 n.1.
2. Parties and courts in habeas corpus cases commonly use the terms "Return of Writ" and
"Traverse", while the Rules Governing Section 2254 Cases currently refer to these briefings as an
"Answer", and "Reply", respectively. *See* Rule 5, Rules Governing Section 2254 Cases.

760, 775 (6th Cir. 2013). This presumption of correctness applies to factual findings of the court of appeals based on the state trial court record. *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).

The Ohio Fifth District Court of Appeals, Stark County, made the following findings of fact:

> {¶ 2} On February 3, 2014, the Stark County Grand Jury indicted Appellant on five counts. Count One of the Indictment charged Appellant with felonious assault, in violation of R.C. 2903.11(A)(1) and/or (A)(2), with a repeat violent offender specification, a felony of the second degree. Count Two charged Appellant with rape, in violation of R.C. 2907.02(A)(2), with repeat violent offender and sexually violent predator specifications, a felony of the first degree. Count Three charged Appellant with kidnapping, in violation of R.C. 2905.01(A)(2) and/or (3) and/or (4) and/or (B)(1) and/or (2), with repeat violent offender, sexually violent predator, and sexual motivation specifications, a felony of the first degree. Count Four charged Appellant with felonious assault, in violation of R.C. 2903.11(A)(1) and/or (A)(2), with a repeat violent offender specification, a felony of the second degree. Count Five charged Appellant with notice of change of address; registration of new address, in violation of R.C. 2950.05(A)(F)(1) and R.C. 2950.99(A), a felony of the third degree. Appellant appeared before the trial court for arraignment on February 7, 2014, and entered a plea of not guilty to all the charges. The trial court appointed Attorney Earl Wise, Jr. to represent Appellant. Appellant executed a waiver of time on February 21, 2014. The matter was scheduled for jury trial on May 19, 2014.

> {¶ 3} On April 14, 2014, Appellant filed a motion to sever the counts for trial. Via Judgment Entry filed May 6, 2014, the trial court granted Appellant's motion to sever, ordering: "count one of the indictment be tried separately, that counts two, three, and four of the indictment be tried together, but separate from any other counts of the indictment, and that count five of the indictment be tried separately." May 6, 2014 Judgment Entry. In addition, the trial court noted, "This matter remains set for trial on May 19, 2014. The State of Ohio shall elect the charges that it wishes to present to the jury on * * * on or before May 9, 2014." *Id.* On May 14, 2014, the trial was rescheduled to May 29, 2014.

> {¶ 4} Appellant filed a waiver of right to be represented by counsel on May 19, 2014. At a pretrial conducted the same day, the trial court informed Appellant the trial on Count One, felonious assault, would be continued until June 16th, and the trial on Count Five, failure to give notice of change of address, would be held on May 27, 2014.[1] The trial court then inquired of Appellant to determine his understanding of his request to represent himself:

> > THE COURT: *Now, is it still your desire though with respect to the one count of failure to notify a change of address to proceed pro se or do you want Mr. Wise to represent you on that?*

2

[APPELLANT]: I will go pro se.

THE COURT: * * * Well, I'm going to make this inquiry of you, Mr. Hopson, and I want to ask you some questions. There's [sic] a lot of questions I have to ask you. * * * If you have questions, you ask me and I'll answer them for you. And if at any point in time you decide that maybe that's not what you want to do, you let me know. Okay?

[APPELLANT]: Okay.

THE COURT: * * * I want you to understand that you do have a right to have a lawyer present with you and that the Court has appointed an attorney to represent you at no cost.And have you thought this matter through and are you certain that you wish to proceed without a lawyer?

[APPELLANT]: Yes, Your Honor.

THE COURT: Okay. Do you understand that Mr. Wise has experience handling criminal matters, in particular handling criminal jury trials? You understand that?

[APPELLANT]: Yes, Your Honor.

THE COURT: Okay. And do you understand that you have a constitutional right to have a lawyer to advise and to represent you at all times? * * *

[APPELLANT]: Yes, Your Honor.

THE COURT: * * * Do you understand also, sir, that a Defendant who represents himself may impart to the jury a negative or bad feeling since a lawyer is not present to handle your case?

[APPELLANT]: I understand that.

* * *

THE COURT: * * * Now, Mr. Hopson, because we are doing this somewhat piecemeal in the fact that all the charges pending against you are not going to be tried at one time, I, *I, am at this point in time with respect to your request to proceed pro se dealing solely with the issue of failure to give notice of change of address. I'm not going to talk about the other charges because if we do in fact go through this trial and you may think perhaps maybe I should have an attorney, if you—if we go through all that—we'll talk about whether or not you want to proceed pro se with just the rest of*

3

them, but just as far as this issue is before the Court I am dealing solely with the failure to give change of address and that is a felony of the third degree.

[APPELLANT]: Yes, ma'am.

\* \* \*

THE COURT: Okay. Do you understand, Mr. Hopson, that it may be much easier for an attorney to contact any potential witnesses on your behalf, to gather evidence on your behalf and to question witnesses on your behalf than it may be for you to do so?

[APPELLANT]: Um, I, I was under the impressions, Your Honor, that I would at least be provided counsel who could gather my evidence and subpoena witnesses for me being that I'm incarcerated in the county jail.

THE COURT: Well, I will be appointing shadow counsel to represent you that—I'm going to have Mr. Wise stay on as counsel. \* \* \* While he may be able to contact those witnesses, it's a lot different—and ask them anything that you want him to ask them \* \* \* it's a lot different than him being able to ask questions and prepare your defense. You understand that?

[APPELLANT]: I understand. I understand.

\* \* \*

THE COURT: Okay. In our discussion here, Mr. Hopson, I believe that I must advise you that in almost every case it would be my opinion that a trained lawyer would defend you far better than you could represent yourself. It is almost always unwise of a Defendant on trial to try to represent themselves. I can tell you quite honestly if I was on trial I would not represent myself. \* \* \* You are not familiar with the law. You are not familiar with handling a trial. You are not familiar with court procedures, and you are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself. Do you understand my position on that issue?

[APPELLANT]: Yes, Your Honor.

\* \* \*

THE COURT: Now, in light of the penalties that you might suffer if you are in fact found guilty and in light of the difficulties in representing yourself, *do you still desire to represent yourself and to give up your right to be represented by a lawyer?*

4

[APPELLANT]: *Yes, Your Honor.*

THE COURT: Okay. Are you making this decision freely and does it reflect your own personal desire?

[APPELLANT]: Yes, Your Honor.

THE COURT: Okay. Now, as I indicated to you earlier, I am going to have Attorney Wise stand on as shadow or standby counsel; * * * And what that means is that he's going to be present in the courtroom; * * * At any point in time you decide that this is too much, that you can't handle it, he will step in and represent you.

* * *

THE COURT: Okay. And are you sure you still want to do this? * * * You don't want to have an attorney represent you?

[APPELLANT]: No, Your Honor.

* * *

THE COURT: Okay. Now, you can change your mind about this at any time, okay. If you go back this afternoon and you start to think about all the things we've talked about and, and you think well, maybe yeah, I—this isn't wise, maybe I shouldn't exactly do this, you can change your mind at any time that includes during the trial itself as well.

Transcript of May 19, 2014 Hearing at 6–9, 14–15, 27–28, 30–33, 36, 38. (Emphasis added).

{¶ 5} During this conversation, the trial court also discussed Appellant's need to abide by the rules of evidence and the rules of criminal procedure; the standard to which Appellant would be held; the effects self-representations may have on his ability to raise certain issues on appeal; the voir dire process and procedures; the presentation of the case from start to finish; as well as potential rights Appellant may be giving up. Appellant acknowledged his understanding of all matters addressed by the trial court.

{¶ 6} The trial court granted Appellant's request to waive counsel, finding, under the totality of the circumstances, Appellant knowingly, intelligently, competently, and voluntarily desired to waive his right to counsel. Thereafter, Appellant executed a waiver of counsel form. Prior to the conclusion of the hearing, the trial court noted: "[A]s I indicated, I am only considering this waiver as it applies to the case that is set for May 27th [sic]; that is the charge of the notice of change of address. * * * Once we go through that and once you see how hard it is, you have the right

to change your mind and we'll go through it all with respect to the more serious charges that remain." May 19, 2014 Tr. at 45.

{¶ 7} On May 22, 2014, the state filed a motion to continue the trial on the ground that some of their witnesses were unavailable. See, Docket Entry 54; Transcript, May 22, 2014 at 12. The trial court conducted a status conference on the same day.

{¶ 8} During the hearing the Appellant indicated to the trial court that he had reconsidered his request to represent himself with respect to the felonious assault charge:

> [HOPSON]: I would like to ask the Court that, um, maybe um—that maybe I could be granted the, the, you know, the, the, the option of later having Attorney Graham to represent me with the other two cases?
>
> [THE COURT]: Well, at this time I'm appointing him to represent you for the other two cases. We haven't talked about whether or not you are going to proceed pro se with respect to those two cases, so I am—
>
> [HOPSON]: Right.
>
> [THE COURT]:—appointing him to represent you in those two cases.
>
> [HOPSON]: Thank you, Your Honor.

Transcript, May 22, 2014 at 7–8. The trial court continued:

> Okay.
> In the meantime, I am appointing Mr. Graham to represent you, Mr. Hopson, on the charges of—all the remaining charges except for the notice of failure to register.
>
> * * *

Transcript, May 22, 2014 at 15.

{¶ 9} Appellant reiterated his desire to represent himself on the charge of failure to notify. The trial court appointed Attorney Wayne Graham to represent Appellant on the remaining charges, and to act as shadow counsel on the notice charge. The trial court granted the state's motion to continue the trial. The trial court continued the trial on the notice charge to June 16, 2014. During the May 22, 2014 status conference, the trial court informed the parties "the State of Ohio has the right to elect what charge they are going to go forward on June the 16th. And I will instruct the State of Ohio to notify myself, Mr. Hopson and Mr. Graham on or before May 28th as to which charge they will proceed with on June 16th, okay?" Transcript of

6

May 22, 2014 Hearing at 15. Following a pretrial on June 25, 2014, the trial court rescheduled the trial to June 30, 2014.

{¶ 10} In a correspondence dated June 5, 2014, and filed June 11, 2014, Appellant advised the trial court he had not yet received notice from the State of Ohio as to which charge it would proceed at trial on June 16, 2014. Appellant filed a Motion to Set Trial Date, which was filed on June 18, 2014. On June 27, 2014, Appellant, through Attorney Graham, filed a motion for a continuance, which the trial court granted. The trial was scheduled for July 21, 2014. At some point, although it is unclear from the record before this Court as to when, the State elected to proceed to trial on the felonious assault charge as contained in Count One of the Indictment. Various pretrials [sic] and status conferences were held during the course of the proceedings, but were not transcribed.

{¶ 11} On the morning of trial, Appellant advised the trial court he wished to proceed pro se. The following exchanged occurred between the trial court and Appellant:

> [APPELLANT]: Your Honor, actually I do want to proceed pro se with this case.
>
> THE COURT: Why?
>
> [APPELLANT]: I mean I believe it would be—I will be well within my rights, wouldn't I?
>
> THE COURT: No, you wouldn't be.
>
> [APPELLANT]: I wouldn't be?
>
> THE COURT: No.
>
> [APPELLANT]: I'm not by law permitted to represent myself?
>
> THE COURT: Well, you are if you can show me good cause as to why I should allow you to proceed pro se after I have given you a new counsel that you requested, and we are now five minutes after the trial should have started and you were just bringing this to my attention.
>
> So tell me why I should allow you to go pro se.
>
> [APPELLANT]: the last time I was in here was Friday. I had written you a letter, Your Honor. In that letter, I was asking to have pretrial conference with you concerning evidence and things of that nature.

When I was brought into the courtroom, neither you nor the prosecution were present at that time. I was then whisked off in the back room to have conference with my attorney over evidence that I felt he and I shouldn't discuss between us and not in an open courtroom or microphone and, you know.

So and then I asked my attorney, I said, Is the Judge present? Is the Prosecutor present? And he told me no. On the way out of the courtroom you were present.

THE COURT: Well, let me clarify that the Court set the matter for a pretrial at your request. The Court met with your appointed counsel and with the State of Ohio, discussed matters for this trial and gave your counsel the opportunity to discuss matters with you in private.* * * The Court was willing to make that accommodation for you.

The fact that there is nothing put on the record does not mean that the State and the Court were not available.

* * *

The Court did discuss with counsel who had indicated that he spoke with you and indicated that his Motion in Limine * * * was sufficient to cover the concerns that you had with respect to the evidence that was presented in your handwritten motion.

Now, the Court finds that at this time at this late stage you have not shown good cause as to why the Court should allow you to go pro se or allow alternative counsel to be present.

The Court has made every accommodation for you, Mr. Hopson, to make sure that your rights are protected, and the Court will deny your motion at this time to proceed pro se.

Transcript of July 21, 2014 Trial at 10–14.

{¶ 12} Thereafter, the trial commenced with Attorney Graham representing Appellant. The following evidence was presented at trial.

{¶ 13} On the evening of December 15, 2013, Canton Police were dispatched to the residence of Shawn Jalloh, after receiving a 911 call advising Jalloh had been assaulted by Appellant, her boyfriend. Officer Jessie Gambs and his partner arrived at the residence and found Jalloh with a bleeding gash on her head. Jalloh was hesitant to tell Officer Gambs what had happened, but eventually informed him Appellant had assaulted her. Officer Gambs questioned Jalloh as to Appellant's whereabouts, but she could not answer. The officer could see Jalloh was fearful.

8

She eventually pointed to her bedroom, where Officer Gambs found Appellant. Jalloh identified Appellant as her assailant.

{¶ 14} Officer Gambs called for paramedics due to the large open, bleeding gash on Jalloh's forehead. While waiting for the paramedics to arrive, the officer noticed the left side of Jalloh's face was swollen around her eye and cheekbone, and she had a bite mark on her right hand. Jalloh told Officer Gambs Appellant became angry when she asked his brother to leave the residence, and they began to argue, which led to Appellant assaulting her. At the hospital, Jalloh provided Officer Gambs with a written statement about the incident.

{¶ 15} Jalloh testified she and Appellant were shopping at Walmart earlier in the day on December 15, 2013. On the way back, Jalloh told Appellant she was going to her mother's house to do laundry. Appellant did not want to accompany Jalloh, so she dropped him off at her apartment. When she returned home several hours later, she found Appellant and his brother, Parnell Stokes, watching football. She observed that the two brothers had been drinking. She left the room and went to the kitchen to cook dinner. Stokes entered the kitchen and gave Jalloh carnival masks as a gift. Stokes returned to the living room. As Jalloh prepared dinner, she heard Appellant ask Stokes to leave. Jalloh asked Appellant why he asked Stokes to leave. Appellant replied his brother was getting in his business.

{¶ 16} Jalloh was upset with Appellant because he had been drinking while she was doing laundry, and because he was noticeably drunk. While she continued cooking dinner, Appellant approached her and pushed her in the neck. Jalloh told Appellant to go home. She telephone [sic] the man Appellant stayed with, however, he did not answer his phone. Jalloh repeatedly asked Appellant to leave, telling him he needed to go somewhere for a couple of days. Jalloh testified she knew it was "gonna end up all bad" if he stayed at her place and she "felt like something was about to happen." Transcript of July 21, 2014 Trial at 138–139. To get Appellant out of her apartment, Jalloh asked him to go to the gas station with her. She hoped to convince Appellant to stay with a friend who lived near the gas station, but Appellant would not do so.

{¶ 17} When they returned to the apartment, Jalloh agreed to let Appellant stay, but insisted he sleep on the couch and leave in the morning. Appellant used Jalloh's cell phone to make a couple of calls. Unable to reach anyone, Appellant threw the cell phone against the wall, breaking it. Jalloh retreated into her bedroom. Appellant followed her, telling her he was "tired of this shit" and that she talked too much. Appellant then jumped on Jalloh, pushing her down on the bed. He proceeded to beat her, striking her face, ears, and arms. Jalloh grabbed Appellant by the mouth and tried to throw him off the side of the bed. She struck her arm on the footboard of the bed. The two continued to struggle for a short time. Appellant then jumped up, grabbed a lamp, and hit Jalloh in the head with it. Jalloh asked Appellant how he could have done this to her. Appellant stated he was sorry and he loved her. Jalloh instructed him to leave, and proceeded to the bathroom because there was

blood all over her bed. She then called 911, and informed the operator she had been struck by a lamp, but would not tell the operator who had hit her. Appellant remained at the apartment despite Jalloh's continued insistence he leave. When the police and paramedics arrived, Jalloh told them what had transpired. Police located Appellant and placed him under arrest. Jalloh was transported to the hospital for treatment.

{¶ 18} Parnell Stokes testified on behalf of Appellant. Stokes, a repeat convicted felon who has served several lengthy prison terms, testified he visited Appellant on December 15, 1013, and the two drank and watched a football game. Stokes stated when Jalloh returned, he gave her a gift of carnival masks. He told Jalloh he and Appellant had been drinking. Stokes could tell from Jalloh's expression that she was not happy, and he grabbed his coat to leave with Appellant. Stokes recalled, as Appellant gathered his coat and belongings from the bedroom, Jalloh struggled with him in an attempt to get Appellant to stay. According to Stokes, Jalloh started to kick Appellant, but inadvertently kicked the lamp by the bed. The lamp flew in the air, crashing down on Jalloh's head. Appellant instructed Stokes to leave, and Stokes complied.

{¶ 19} Appellant, who testified in his own defense, recalled, after he and Jalloh finished shopping, he went to the apartment while Jalloh went to do laundry at her mother's house. Appellant invited his brother over to watch football and drink. When Jalloh returned home, she was visibly angry because he and his brother had been drinking. Appellant decided to leave with his brother because he could see Jalloh was in a bad mood. When he went into the bedroom to collect his coat and other things, Jalloh grabbed him and clawed his face. Appellant pushed Jalloh away, but the two fell to the bed because Jalloh would not let go of him. As the two struggled, Jalloh started kicking Appellant, then accidently kicking the lamp by the bed, which crashed on her. Jalloh called 911. Appellant stated he did not leave because Jalloh was seriously injured and he did not want to leave her alone. Appellant indicated he was not concerned about the police, as he had not done anything wrong. After the police arrived and spoke with Jalloh, Appellant was arrested.

{¶ 20} After hearing all the evidence and deliberating, the jury found Appellant guilty of one count of felonious assault as set forth in Count One of the Indictment. The trial court sentence Appellant to an aggregate prison term of 14 years, 8 years for the felonious assault and 6 years for the repeat violent offender specification.

*State v. Hopson*, 2015 WL 4270317 (Ohio Ct. App.) (emphasis in original).

## PROCEDURAL BACKGROUND

*State Court Conviction*

On February 3, 2014, a Stark Country Grand Jury indicted Petitioner on two counts of felonious assault (in violation of Ohio Revised Code 2903.11(A)(1) and/or (A)(2)), with a repeat violent offender specification (Counts 1 and 4); one count of rape (in violation of Ohio Revised Code 2907.02(A)(2)), with repeat violent offender and a sexually violent predator specifications; one count of kidnapping (in violation of Ohio Revised Code 2905.01(A)(2) and/or (3), and/or (4), and/or (B)(1) and/or (B)(2)), with repeat violent offender, sexually violent predator, and sexual motivation specifications); and one count of notice of change of new address/registration of new address (in violation of Ohio Revised Code 2950.05(A)(F)(1) and 2950.99(A)). (Ex. 1, Doc. 7-1, at 1-8).

On April 14, 2014, Petitioner moved to sever the counts of the indictment and set them for separate trials, arguing the counts arose from separate conduct and transactions. (Ex. 2, Doc. 7-1, at 10-11). The trial court sustained the motion, ordered Counts 1 and 5 be tried separately, and Counts 2, 3, and 4 be tried together, but separately from Counts 1 and 5. (Ex. 3, Doc. 7-1, at 12).

Prior to pre-trial hearing held May 19, 2014, Petitioner advised the court of his desire to represent himself at trial. *See* Doc. 20, at 5-6. At the May 19, 2014 pre-trial, the court explained the failure to notify of change of address charge would be tried first, and Petitioner indicated he wished to proceed *pro se* on that charge. *Id.* at 8-9. After a colloquy with Petitioner, the trial court found he knowingly, intelligently, and voluntarily waived his right to counsel. *Id.* at 46-47.; *see also* Ex. 4, Doc. 7-1, at 13 (signed waiver). Several times during the hearing, the court indicated it was only considering Petitioner's request to represent himself on the failure to notify charge at that time. (Doc. 20, at 8, 16-17, 47).

11

At a hearing on May 22, 2014, Petitioner's desire to represent himself on the other pending charges was also discussed. *See* Doc. 7-2. The trial court ultimately appointed new counsel to represent Petitioner on the other charges. (Doc. 7-2, at 4-15); *see also* Ex. 5, Doc. 7-1, at 14 (appointing new counsel).

Petitioner, represented by counsel, was tried by a jury on Count 1 of the indictment (felonious assault), and was found guilty as charged. (Ex. 7, Doc. 7-1, at 17-18); *see also* Doc. 20, at 52-357 (July 21, 2014 trial transcript). On July 30, 2014, the trial court sentenced Petitioner to an aggregate term of fourteen years imprisonment (eight years on the felonious assault conviction, and a consecutive six years on the repeat violent offender specification). (Ex. 8, Doc. 7-1, at 19-22).[3]

*Direct Appeal*

The trial court appointed Petitioner new counsel on appeal. (Ex. 11, Doc. 7-1, at 29). Petitioner, through counsel, filed a timely notice of appeal (Ex. 12, Doc. 7-1, at 30), and in his brief, raised two assignments of error:

1.   The trial court erred in preventing Appellant from acting as his own counsel for the purposes of his jury trial.

2.   The Appellant's conviction for one count of felonious assault was against the manifest weight and sufficiency of the evidence.

(Ex. 13, Doc. 7-1, at 31-56). Petitioner, acting *pro se*, filed a letter with the appellate court stating he intended to represent himself, and had terminated the services of his court-appointed counsel. (Ex. 14-15, Doc. 7-1, at 57-65). Petitioner also filed a motion to void the appellate brief filed on

---

3. Petitioner later pled guilty to Count 5, and imposed a sentence of twelve months' imprisonment, to be served concurrently to his conviction on Count 1. (Ex. 9, Doc. 7-1, at 23-26). Counts 2, 3, and 4 of the indictment were nolled. (Ex. 10, Doc. 7-1, at 27-28).

his behalf by his attorney. (Ex. 16, Doc. 7-1, at 66-71). The appellate court removed Petitioner's counsel, and permitted him to proceed *pro se*. (Ex. 17, Doc. 7-1, at 72). However, the court noted Petitioner could not amend the brief previously filed by counsel, but could file a *pro se* Reply brief after the State's brief was filed. *Id.* The State filed an opposition brief. (Ex. 18, Doc. 7-1, at 73-92).

On March 19, 2015, Petitioner filed a motion to appeal the judgment entry denying his motion to void his prior counsel's appellate brief. (Ex. 19, Doc. 7-1, at 93-115). The appellate court denied the motion. (Ex. 20, Doc. 7-1, at 116).[4]

On July 13, 2015, the appellate court overruled Petitioner's assignments of error and affirmed the judgment of the trial court. (Ex. 21, Doc. 7-1, at 117-143); *Hopson*, 2015 WL 4270317.

On August 26, 2015, Petitioner, acting *pro se*, timely appealed the appellate court's decision affirming his conviction. (Ex. 27, Doc. 7-1, at 190-91). In his memorandum in support of jurisdiction, Petitioner asserted two propositions of law:

I.      Denial of Self-Representation

II.     Sufficient [sic] of Evidence

(Ex. 28, Doc. 7-1, at 192-233). The State filed a memorandum opposing jurisdiction. (Ex. 29, Doc. 7-1, at 234-50). On November 10, 2015, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal. (Ex. 30, Doc. 7-1, at 251).

---

4. While his direct appeal was still pending, Petitioner filed a notice of appeal and memorandum in support with the Ohio Supreme Court from the appellate court's prior order (Ex. 17, Doc. 7-1, at 72). (Exs. 22-23, Doc. 7-1, at 144-71). He also filed a motion to stay. (Ex. 24, Doc. 7-1, at 172-79). The state filed an opposition. (Ex. 25, Doc. 7-1, at 180-88). The Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal. (Ex. 26, Doc. 7-1, at 189).

*Application for Reopening*

While his direct appeal was pending before the Ohio Supreme Court, Petitioner, *pro se*, filed an application to reopen his direct appeal pursuant to Ohio Appellate Rule 26(B). (Ex. 31, Doc. 7-1, at 252-60). In it, he alleged his appellate counsel was ineffective for failing to raise two assignments of error on direct appeal: 1) judicial bias; and 2) ineffective assistance of counsel: conflict of interest. *Id.* On December 2, 2015 (after the Ohio Supreme Court had declined jurisdiction of his direct appeal), the appellate court denied Petitioner's application for reopening. (Ex. 32, Doc. 7-1, at 261-68). Petitioner filed a timely appeal of this denial to the Ohio Supreme Court. (Ex. 33, Doc. 7-1, at 269-70). In his memorandum in support of jurisdiction, he asserted two propositions of law:

I.      Judicial bias

II.     Ineffective assistance of counsel: conflict of interest.

(Ex. 34, Doc. 7-1, at 271-86). The state opposed jurisdiction. (Ex. 35, Doc. 7-1, at 287-97). On April 20, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (Ex. 36, Doc. 7-1, at 298).

## FEDERAL HABEAS CORPUS

Petitioner, *pro se*, signed and placed the instant habeas petition in the prison mail system on July 11, 2016, challenging his judgment of conviction. (Doc. 1). Petitioner alleges four claims for relief:

| | |
|---|---|
| **GroundOne1:** | Judicial Bias |
| **Ground Two:** | Denial of Right to Self-representation |
| **Ground Three:** | Ineffective Assistance of Counsel: Counsel'[s] Conflicting Interest |
| **Ground Four:** | Sufficiency of the Evidence |

14

(Doc. 1, at 6, 12, 16, 19).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

In his Petition, Petitioner raises four grounds for relief. (Doc. 1). Respondent contends Ground One (judicial bias) is procedurally defaulted, Ground Two (denial of right to self-representation) is meritless, Ground Three (ineffective assistance of counsel) is procedurally defaulted, and Ground Four (sufficiency of the evidence) is meritless. *See* Doc. 7. Respondent also contends Petitioner has not alleged cause, prejudice, or miscarriage of justice to excuse his default of Grounds One and Three. *Id.* at 19-20. In his Reply, Petitioner asserts ineffective assistance of appellate counsel as cause, and contends that not excusing his default "would result in a fundamental miscarriage of justice". (Doc. 13, at 9) (citing *Coleman*, 501 U.S. at 750). Petitioner also argues the merits of each of his grounds. *See* Doc. 13. For the reasons discussed below, the undersigned recommends the Court find Grounds One and Three are procedurally defaulted, and Ground Two and Four meritless.

### *Exhaustion & Procedural Default*

Petitioners must exhaust state court remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied when a petitioner has given "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See id.*; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971). In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The claims must also be presented to the state courts as federal

16

constitutional claims. *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). In reviewing the state

court proceedings to determine whether a petitioner has "fairly presented" a claim to the state

courts, courts have looked to the petitioner's:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon
> state cases employing federal constitutional analysis; (3) phrasing the claim in
> terms of constitutional law or in terms sufficiently particular to allege a denial of a
> specific constitutional right; or (4) alleging facts well within the mainstream of
> constitutional law.

*Whitings v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005).

Related to exhaustion is the issue of procedural default. First, a petitioner may procedurally

default a claim by failing to comply with state procedural rules in presenting his claim to the

appropriate state court. *Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006) (citing *Wainwright

v. Sykes,* 433 U.S. 72, 87 (1977)); *see also Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). If,

due to petitioner's failure to comply with the procedural rule, the state court declines to reach the

merits of the issue, and the state procedural rule is an independent and adequate grounds for

precluding relief, the claim is procedurally defaulted. *Williams v. Anderson*, 460 F.3d 789, 806

(6th Cir. 2006). Second, a petitioner may procedurally default a claim by failing to raise the claim

in state court, and pursue that claim through the state's "ordinary appellate review procedures."

*O'Sullivan*, 526 U.S. at 847. In Ohio, this means a defendant must fairly present his constitutional

claims on the record to the trial court, the court of appeals, and the Supreme Court of Ohio on

direct appeal. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003).

To overcome procedural default a petitioner must establish: 1) "cause for the default," and

2) "actual prejudice from it." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009). "To show cause

for the default, a petitioner must show more than mere error, he must establish a substantial reason

to excuse the default." *Id.* Cause "must be something external to the petitioner, something that

cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

*Application to Grounds One & Three*

Petitioner concedes his first and third grounds for relief are defaulted "due to his failure to fairly present them to all levels of the Ohio courts." (Doc. 13, at 7-8). This is correct—Petitioner did not raise these claims on direct appeal, *see* Ex. 12, Doc. 7-1, at 30, and thus did not fairly present them at the first available opportunity. *See O'Sullivan*, 526 U.S. at 847; *Caver*, 249 F.3d at 346. And, were Petitioner to attempt to present them now, they would be barred by Ohio's doctrine of res judicata. *State v. Perry*, 10 Ohio St. 2d 175 (1967). The Sixth Circuit has repeatedly held Ohio's procedural bar of res judicata is an adequate and independent state law ground on which to base a procedural default. *See, e.g., Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000).

Petitioner, in Reply, however, contends the default should be excused based on ineffective assistance of appellate counsel, which he raised in his Appellate Rule 26(B) application for reopening. (Doc. 13, at 8-9). Respondent contends that the application for reopening cannot preserve the underlying substantive claims. (Doc. 7, at 19).

Although Respondent is correct that a Rule 26(B) application for reopening does not preserve the underlying claims raised therein, *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008), a non-defaulted ineffective assistance of appellate counsel claim can constitute excusing cause for a procedural default, *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Because Petitioner did in fact present claims of ineffective assistance of appellate counsel to the Ohio courts, *see* Ex. 31, Doc. 7-1, at 252-60, this Court will consider whether Petitioner's claim of ineffective assistance

18

of appellate counsel is meritorious and therefore establishes cause to excuse the default of his first and third claims.

Ineffective assistance of appellate counsel can serve as cause to excuse the procedural default of other claims brought by a habeas petitioner. *Edwards*, 529 U.S. at 451. The test of *Strickland v. Washington,* 466 U.S. 668 (1984) (constitutionally deficient performance plus prejudice) applies to appellate counsel. *Smith v. Robbins,* 528 U.S. 259, 285 (2000); *Parks v. Bobby,* 545 F. App'x 478, 481 (6th Cir. 2013); *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland* . . . there is no inequity in requiring him to bear the risk of attorney error that results in a procedural default.").

An appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-52 ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). "In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano,* 228 F.3d 674, 682 (6th Cir. 2000). The failure to raise an issue on appeal is only ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal. *McFarland v. Yukins,* 356 F.3d 688, 710-11 (6th Cir. 2004). The failure to raise an underlying claim in the appeal which would have been unsuccessful is not ineffective assistance of appellate counsel. *Meek v. Bergh,* 526 F. App'x 530, 534 (6th Cir. 2013). "Counsel's performance is strongly presumed to be effective." *McFarland,* 356 F.3d at 710 (quoting *Scott v. Mitchell,* 209 F.3d 854, 880 (6th Cir.

2000)). To prevail on a claim of ineffective assistance of appellate counsel, a petitioner must show that appellate counsel "ignored issues [which] are clearly stronger than those presented." *Smith,* 528 U.S. at 288 (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)). Thus, the question is one of whether the actions of Petitioner's appellate counsel in failing to raise the claims presented constituted constitutionally ineffective assistance.

The Ohio appellate court rejected Petitioner's claims of ineffective assistance of appellate counsel:

> In his present motion to re-open, appellant maintains he received ineffective assistance of appellate counsel on direct appeal. The standard for reviewing claims for ineffective assistance of counsel was set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ohio adopted this standards in the case of *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.

> First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and volatile [sic] of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether the defense was actually prejudice [sic] by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. We apply the *Strickland* test to all claims of ineffective assistance of counsel, either trial counsel, or appellate counsel. *State v. Blacker*, 5th Dist. Guernsey No. 2005-CA-41, 2006-Ohio-5214.

> Appellant bears the burden of establishing there is a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel, *see, e.g. State v. Spivey*[,] 84 Ohio St.3d 24, 1998-Ohio-704, 701 NE 2d 696.

> Appellant has proposed two assignments of error in his motion:

> "Judicial Bias"

> "Ineffective Assistance of Counsel: Conflict of Interest"

> * * *

20

In the interests of justice, we shall attempt to consider appellant's assignments of error.

I.

In his first proposed assignment of error, appellant argues that the trial judge was bias [sic] against him in denying appellant his right to self-representation.

"Pursuant to R.C. 2701.03, only the chief justice of the Supreme Court of Ohio or his or her designee has the authority to determine a claim that a common pleas court judge is biased or prejudiced." *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 94. Accordingly, this Court is without jurisdiction to consider a claim of judicial bias. In any event, we conclude, "appellant has failed to overcome the presumption of lawfulness and impartiality in the trial judge's participation in this case." *Stanley v. Ohio State Univ. Med. Ctr.*, 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 00.

"Judicial bias has been described as 'a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *State v. Dean*, 127 Ohio St.3d 1400, 2010-Ohio-5070, ¶ 48, *quoting State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463 (1956), paragraph four of the syllabus.

"A judge is not presumed to be biased or prejudiced, and a party alleging bias or prejudice must present evidence to overcome the presumption." *Wardeh v. Altabchi*, 10th Dist. No. 03AP-1177, 2004-Ohio-4423, ¶ 20. "The appearance of bias or prejudice must be compelling to overcome this presumption of integrity." *Trott v. Trott*, 10th Dist. No. 01AP-852, 2002 WL 392286 (Mar. 14, 2002), citing *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 1263 (1994). "The existence of bias or prejudice against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party." *Eller v. Wendy's Internatl., Inc.*, 142 Ohio App.3d 321, 340 (10th Dist. 2000), *quoting Okocha v. Fehrenbacher*, 101 Ohio App.3d 309, 322 (8th Dist. 1995).

"[D]issatisfaction or disagreement with a judge's ruling of law are legal issues subject to appeal. A judge's opinions of law, even if later found to be erroneous, are not by themselves evidence of bias or prejudice and thus are not grounds for disqualification." *In re Disqualification of Corts*, 47 Ohio St.3d 601, 602, 546 N.E.2d 928 (1988).

The record does not disclose on its face suggestions of hostility, favoritism, or a fixed anticipatory judgment. "Appellant's unsubstantiated accusations of improper conduct are insufficient to overcome the presumption of judicial integrity." *Cline v. Mtge. Electronic Registration Sys., Inc.*, 10th Dist. No. 13AP-

21

240, 2013-Ohio-5706, ¶ 33, *citing Cooke v. United Diary Farmers, Inc.*, 10th Dist. No. 05AP-1307, 2006-Ohio-4365.

Accordingly, we find that the issue asserted by appellant in his first proposed assignment of error raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal***" *State v. Smith*[,] 95 Ohio St.3d 127, 2002-Ohio-1753.

II.

In his second proposed assignment of error, appellant maintains he received ineffective assistance because his trial counsel had a conflict of interest. Specifically, appellant claims that his trial counsel had informed him of ex parte communications between his trial counsel and the judge. Appellant claims these communications were designed to thwart his request at self-representation.

Appellant's claims depend on evidence de hors the record; accordingly, they are not a proper basis for an assignment of error on appeal or an application to re-open and [sic] appeal under App.R. 26.

In any event, as we noted in our opinion,

However, Appellant clearly reconsidered his request to represent himself with respect to the felonious assault charge during the March 22, 2014 hearing when he asked the trial court to appoint Attorney Graham for the other charges. We find that, at the very least, Appellant led the trial court to believe that he wanted Mr. Graham to represent him on the felonious assault charge subsequent to the filing of his notice of self-representation. Cleary, Appellant failed to object to the trial court's appointment in court when he had the opportunity to do so.

In the case at bar, the trial of the felonious assault charge commenced on July 21, 2014. In a July 16, 2014 letter to the judge, Appellant requested a pre-trial conference with "my defense counsel, the prosecution and myself …" A final pre-trial was held on July 18, 2014. Thus, Appellant again gave the trial court the appearance that he was accepting and working with Mr. Graham to prepare for trial as little as three days prior to the start of the jury trial. Appellant again did not inform Mr. Graham or the trial court that he wanted to proceed pro se on the felonious assault charge when he clearly had the opportunity prior to the start of the jury trial.

Accordingly, we find that the issue asserted by appellant in his first [sic] proposed assignment of error raises "no genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal***" *State v. Smith*[,] 95 Ohio St.3d 127, 2002-Ohio-1753.

22

 (Ex. 32, Doc. 7-1, at 262-67).

The record here fails to establish the ineffective assistance of appellate counsel for failing to raise a judicial bias, or ineffective assistance of trial counsel claim. And the Ohio court's determination on this issue was not an unreasonable application of federal law. As the Ohio state court found, there was no evidence in the record of judicial bias. And, because appellate counsel cannot be ineffective for failing to raise a non-meritorious claim, this is not constitutionally ineffective assistance of counsel. *See*, *e.g.*, *McFarland*, 356 F.3d at 710-11; *Meek*, 526 F. App'x at 534; *see also Campbell v. Schweitzer*, 2017 WL 4510619, at *2 (S.D. Ohio) ("To put it another way, ineffective assistance of appellate counsel would excuse failure to raise the claims on direct appeal, but the [state court's] decision that [the petitioner] did not receive ineffective assistance of counsel is not objectively unreasonable.").

Similarly, the Ohio court found Petitioner's claim that appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim was: 1) not properly before the court because it was based on evidence outside the record, and 2) in any event, meritless because Petitioner's underlying self-representation claim was without merit. Both of Petitioner's underlying claims are premised on his belief that the court and trial counsel conspired to deprive him of his right to self-representation. As explained below, the state court did not err in finding Petitioner's self-representation right not violated. The *Strickland* standard is a deferential one. Petitioner has not shown that his appellate counsel "errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions", *McMeans,* 228 F.3d at 682, or "a reasonable probability that [he] would have prevailed if the claims were raised on appeal", *Meek*, 526 F. App'x at 534 (citing *Smith*, 528 U.S. at 285).

Petitioner has therefore failed to establish cause for his procedural default of Grounds One and Three. *See Edwards*, 529 U.S. at 451.

Moreover, although Petitioner asserts that not permitting these claims to proceed "would result in a fundamental miscarriage of justice", citing *Coleman*, 501 U.S. at 750 (Doc. 13, at 9), Petitioner has not satisfied this demanding standard. The fundamental miscarriage of justice exception is explicitly linked to a showing of the petitioner's actual innocence. *Gibbs v. United States,* 655 F.3d 473, 477 (6th Cir. 2011). "Actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623 (1998). In other words, the habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him or her in light of new evidence. *In re Byrd,* 269 F.3d 561, 573 (6th Cir. 2001). Therefore, the fundamental miscarriage of justice exception is available "only where the prisoner *supplements* his or her constitutional claim with a colorable showing of factual innocence." *Herrera v. Collins,* 506 U.S. 390, 404 (1993) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454 (1986) (emphasis in original). Petitioner does not do so here. As such, this exception does not apply.

For these reasons, Petitioner has procedurally defaulted Grounds One and Three, and has not shown cause, prejudice, or a miscarriage of justice to excuse that default. As such, Grounds One and Three should be denied.

***Merits Analysis***

Remaining are Petitioner's second and fourth grounds for relief, alleging a denial of the right to self-representation and that his conviction was based on insufficient evidence. These grounds were presented on direct appeal, and are thus exhausted and not procedurally defaulted. *See* Exs. 13, 27-28, Doc. 7-1, at 31-56, 190-233. Respondent contends Petitioner has not shown the state court's resolution of these claims: "(1) resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). *See* Doc. 7, at 23-36. Petitioner contends he has shown these claims to satisfy the habeas standard. (Doc. 13, at 19-24; 31-39).

*Ground Two: Right to Self-Representation*

Petitioner asserts he invoked his Sixth Amendment right to self-representation, and the trial court violated that right by not permitting him to represent himself in the felonious assault case. Respondent contends this ground is without merit, and the state court determination on this issue is entitled to deference under AEDPA. For the reasons discussed below, the undersigned recommends Ground Two be denied.

The Sixth Amendment provides that a criminal defendant shall have the right to assistance of counsel for his defense. U.S. Const. Amend. VI. In *Faretta*, the Supreme Court recognized a corollary constitutional right "to proceed without counsel when [a defendant] voluntarily and intelligently elects to do so." 422 U.S. 806, 807 (1975). However, "[a]s the *Faretta* opinion recognized, the right to self-representation is not absolute." *Martinez v. Ct. of Appeal of Cal.*, 528 U.S. 152, 161 (2000). A defendant may forfeit his self-representation right if he does not assert it "in a timely manner." *Id.* at 162. Such a limit reflects that "[e]ven at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Id.*; *see also Hill v. Curtin*, 792 F.3d 670, 677-79 (6th Cir. 2015) (state court decision denying self-representation request made on first day of trial as untimely without performing a *Faretta* inquiry was not an unreasonable application of federal law).

25

A defendant's decision to represent himself—and thereby waive counsel—must be knowingly and voluntarily made. *Faretta*, 422 U.S. at 835. Because the dangers and disadvantages of self-representation during trial are so substantial, an accused will not be deemed to have validly waived his Sixth Amendment right to counsel unless the court has made a "searching or formal inquiry" to ensure that his waiver is knowing, intelligent, and voluntary." *Patterson v. Illinois*, 487 U.S. 285, 292 & n.4 (1988). "*Faretta* procedures" inquiring into a defendant's waiver "are only required when a defendant has clearly and unequivocally asserted his right to proceed pro se." *United States v. Cromer*, 389 F.3d 662, 682 (6th Cir. 2004). "Although the Supreme Court has required [a *Faretta*] inquiry before *granting* a self-representation request—which is, in effect, a waiver of the right to counsel—it has not required a court to inquire before *denying* a request as untimely." *Hill*, 792 F.3d at 678 (citing *Faretta*, 442 U.S. at 835) (emphasis in original).

Finally, the right to self-representation may be waived if the defendant engages in conduct indicating that he has either abandoned his request to self-represent or is ambivalent with respect to self-representation. *See Wilson v. Walker*, 204 F.3d 33, 37 (2d Cir. 2000) ("Once asserted . . . the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether.").

The state appellate court addressed Petitioner's denial-of-self-representation claim on direct appeal:

> {¶ 24} In his first assignment of error, Appellant maintains the trial court erred in preventing him from acting as his own counsel for the purpose of his jury trial.

> {¶ 25} Criminal defendants enjoy the constitutional right to self-representation at trial provided that the right to counsel is knowingly, voluntarily, and intelligently waived after sufficient inquiry by the trial court. *State v. Johnson,* 112 Ohio St.3d 210, 2006–Ohio–6404, at ¶ 89. "If a trial court denies the right to self-representation, when properly invoked, the denial is per se reversible error." *State v. Cassano,* 96 Ohio St.3d 94, 2002–Ohio–3751, at ¶ 32, citing *State v. Reed,* 74 Ohio St.3d 534, 535, 1996–Ohio–21; *McKaskle v. Wiggins* (1984), 465 U.S. 168,

177. "To establish an effective waiver of the right to counsel, 'the trial court must make sufficient inquiry to determine whether [the] defendant fully understands and intelligently relinquishes that right.' " *Cassano* at ¶ 32, quoting *Gibson* at paragraph two of the syllabus (alteration in original). Further, the invocation of the right to self-representation must be 'clear and unequivocal.' " *State v. Hadden,* Trumbull App. No.2008–T–0029, 2008–Ohio–6999, at ¶ 62, citing *Cassano* at ¶ 38; *United States v. Frazier–El* (C.A.4, 2000), 204 F.3d 553, 558. It must also be timely made, and self-representation may be properly denied when requested in close proximity to trial or under circumstances indicating that the request is made for purposes of delay or manipulation. *State v. Vrabel,* 99 Ohio St.3d 184, 2003–Ohio–3193, at ¶ 50.

{¶ 26} In the case at bar, the trial was originally scheduled for May 19, 2014, but rescheduled to May 29, 2014. Appellant filed a waiver of right to be represented by counsel on May 19, 2014. At a pretrial conducted that same day, the trial court discussed Appellant's request solely with respect to the failure to give notice of change of address charge. The trial court advised Appellant, "I'm not going to talk about the other charges because if we do in fact go through this trial and you may think perhaps maybe I should have an attorney, if you—if we go through all that— we'll talk about whether or not you want to proceed pro se with just the rest of them." Transcript of May 19, 2014 Hearing at 15. Thereafter, the trial court found, under the totality of the circumstances, Appellant knowingly, intelligently, competently, and voluntarily desired to waive his right to counsel. Prior to the conclusion of the hearing, the trial court reiterated: "[A]s I indicated, I am only considering this waiver as it applies to the case that is set for May 27th [sic]; that is the charge of the notice of change of address." *Id.* at 45.

{¶ 27} However, Appellant clearly reconsidered his request to represent himself with respect to the felonious assault charge during the March 22, 2014 hearing when he asked the trial court to appoint Attorney Graham for the other charges. We find that, at the very least, Appellant led the trial court to believe that he wanted Mr. Graham to represent him on the felonious assault charge subsequent to the filing of his notice of self-representation. Clearly, Appellant failed to object to the trial court's appointment in court when he had the opportunity to do so.

{¶ 28} In the case at bar, the trial of the felonious assault charge commenced on July 21, 2014. In a July 16, 2014 letter to the judge, Appellant requested a pre-trial conference with "my defense counsel, the prosecution and myself ..." A final pre-trial was held on July 18, 2014. Thus, Appellant again gave the trial court the appearance that he was accepting and working with Mr. Graham to prepare for trial as little as three days prior to the start of the jury trial. Appellant again did not inform Mr. Graham or the trial court that he wanted to proceed pro se on the felonious assault charge when he clearly had the opportunity prior to the start of the jury trial.

{¶ 29} Accordingly, we find that the Appellant's request the morning of trial to represent himself in the felonious assault case was not timely made. *State v. Neyland,* 139 Ohio St.3d 353, 2014–Ohio–1914, 12 N.E.2d 1112, ¶ 76; *State v. Cassano,* 96 Ohio 94, 2002–Ohio–3751, 772 N.E.2d 81, ¶ 40.

{¶ 30} Appellant's first assignment of error is overruled.

*Hopson*, 2015 WL 4270317, at *7-8.

This analysis was not "contrary to, or . . . an unreasonable application of, clearly established Federal law" or "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). First, as the state court recognized, at the May 19, 2014 hearing, the trial court clearly advised Petitioner it was only ruling on his self-representation request as it pertained to the failure to register charge, which was to be tried separately. *See Hopson*, 2015 WL 4270317, at *7. The court inquired of Petitioner: "[I]s it still your desire though with respect to the one count of failure to notify a change of address to proceed pro se or do you want Mr. Wise to represent you on that?", to which Petitioner responded, "I will go pro se." (Doc. 20, at 8). The court then conducted a colloquy with Petitioner, during which it noted:

> I am at this point in time with respect to your request to proceed pro se dealing solely with the issue of failure to give notice of a change of address. I'm not going to talk about the other charges because if we do in fact go through this trial and you may think that perhaps maybe I should have an attorney, if you - - if we go through all that - - we'll talk about whether or not you want to proceed pro se with just the rest of them, but just as far as this issue is before the Court I am dealing solely with the failure to give change of address[.]

*Id.* at 14-15. After a lengthy, thorough colloquy with Petitioner, *id.* at 9-47, the trial court found he had knowingly, intelligently, and voluntarily waived his right to counsel, *id.* at 46-47. The court also appointed Petitioner's prior counsel as standby/shadow counsel. *Id.* at 30; *see also id.* at 34, 41, 47. At the end of the hearing, the court repeated its earlier statement that the waiver under discussion only applied to the failure to notify charge:

28

THE COURT: Now also, Mr. Hopson, as I indicated, I am only considering this waiver as it applies to the case that is set for May 27th; that is the charge of the notice of change of address.

THE DEFENDANT: Yes.

THE COURT: Once we go through that and once you see how hard it is, you have the right to change your mind and we'll go through it all with respect to the more serious charges that remain.

THE DEFENDANT: Right.

THE COURT: Okay? You understand - -

THE DEFENDANT: Yes.

THE COURT: - - that?

THE DEFENDANT:  Yes, Your Honor.

*Id.* at 47-48. Three days later, on May 22, 2014, at a second pre-trial hearing, there was additional

discussion of Petitioner's request to represent himself:

THE COURT: . . . And I've also given some more consideration to what has kind of led us here and you representing yourself pro se. I've got to tell you, Mr. Hopson, I respect the choice that you made, as unwise as I think it is, and we dealt solely with the notice of the change of address charge. And never - - we didn't - - I told you I wasn't going to address the rape or the felonious assault because we just had the one issue before us.

But in giving that more consideration, I'm telling you that whether or not I let you proceed pro se on that is a really tough call to make just because of the possibility of the sentence that you could be facing, 20 years to life in prison, and given the severity of that penalty I have severe reservations about letting you proceed pro se on those issues.

And I understand that the reason that has led you to request the ability to represent yourself is because you don't, for lack of a better word, trust Mr. Wise anymore; is that correct?

THE DEFENDANT: For lack of a better word, yes.

THE COURT: Okay. If you were given substitute counsel, would you be willing to talk with them about whether or not you actually wanted to proceed pro se?

THE DEFENDANT: Um, at, at this time, Your Honor . . . I would much rather proceed pro se with the failure to register case and charge as schedule for the 27th. . . .

* * *

THE DEFENDANT: . . . I would like to ask the Court that, um, maybe, um - - that maybe I could be granted . . . the option of later on having Attorney Graham to represent me with the other two cases?

THE COURT: Well, at this time, I'm appointing him to represent you for the other two cases. We haven't talked about whether or not you are going to proceed pro se with respect to those two cases, so I am - -

THE DEFENDANT: Right.

THE COURT: - - appointing him to represent you in those two cases.

THE DEFENDANT: Thank you, Your Honor.

(Doc. 7-2, at 4-8). The court further explained:

THE COURT: In the meantime, I am appointing Mr. Graham to represent you, Mr. Hopson, on the charges of - - all the remaining charges except for the notice of failure to register.

If in talking to Mr. Graham you feel as though you would want him to represent you in [sic] the charge, you have that right. Just because you have requested to go pro se on it you are more than free to revoke that request at any point in time. So if you feel as though he will do an adequate representation of you with respect to that charge and you want to go forward with him, you just let me know. If he can assist you in representing yourself, I will appoint him as shadow counsel to handle the notice of failure to register and anything that you want to accomplish in that regard. Okay?

THE DEFENDANT:  Um, so, so I mean at, at - - right now is Attorney Wise - -

THE COURT: He's done.

THE DEFENDANT: - - my shadow counsel?

THE COURT: No. He's - -

THE DEFENDANT: Or he's done?

THE COURT: He's done.

THE DEFENDANT: Okay.

THE COURT: Everything's going to go through Mr. Graham. Okay?

THE DEFENDANT: May, may I address the prosecution?

MS. MLINAR: No.

THE COURT: Well, you can tell me anything that you want to.

***

THE COURT: Okay. Mr. Graham, do you want the opportunity to talk with Mr. Hopson while he's here?

MR. GRAHAM: Your Honor, I had a chance - - we had a chance to speak earlier downstairs.

THE COURT: Okay.

MR. GRAHAM: We are intending to spend some time together out at the county in a better more better - -

THE COURT: Well, If you needed time, I would make time for you in the jury room if you wanted to take a few moments.

MR. GRAHAM: I think we're good with what we have planned.

THE COURT: Okay. All right. Well, and if you could just, you know . . . once he has figured out . . . if he wants you involved in the notice of change of address - - you don't have to have him; I'm not appointing him for that because you have decided to go pro se on that charge. If, however, you decide that you do want him, you are free to have him. Okay?

THE DEFENDANT: Thank you.

* * *

THE COURT: Anything else you need Mr. Hopson?

THE DEFENDANT: I guess that if there's anything else that I would need I would address that to Mr. Graham?

THE COURT: Correct.

THE DEFENDANT: Thank you.

* * *

THE COURT: Anything further? Okay.

MS. MLINAR: No, thank you.

THE DEFENDANT: No. No, thank you.

*Id.* at 15-22. A review of the transcript shows that at no point during this hearing did Petitioner "clearly and unequivocally" assert his desire to represent himself on the felonious assault charge. In fact, he indicated the opposite, that he was cooperating with newly appointed counsel. Without such clear and unequivocal assertion, the trial court was not required to perform a *Faretta* inquiry. *Cromer*, 389 F.3d at 682. As the trial court explained:

> We find that, at the very least, Appellant led the trial court to believe that he wanted Mr. Graham to represent him on the felonious assault charge subsequent to the filing of his notice self-representation. Clearly, Appellant failed to object to the trial court's appointment in court when he had the opportunity to do so.

*Hopson*, 2015 WL 4270317, at *8.

Further, as the state court recognized, from that point until the trial, Petitioner gave the court no indication he wished to represent himself, and, in fact, gave indications he was working with defense counsel. *See id.* ("In a July 16, 2014 letter to the judge, Appellant requested a pre-trial conference with 'my defense counsel, the prosecution and myself . . .' A final pre-trial was held on July 18, 2014. Thus, Appellant again gave the trial court the appearance that he was accepting and working with Mr. Graham to prepare for trial as little as three days prior to the start of the jury trial."). Thus, even if Petitioner had earlier asserted his right, he waived that assertion through his later actions. *Wilson*, 204 F.3d at 37 ("Once asserted . . . the right to self-representation may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether.").

Finally, on the first day of trial, Petitioner again brought up his right of self-representation:

THE COURT: And Mr. Hopson, let me just, for the record, indicate that the Court had previously allowed you to proceed pro se with respect to one count, and that was the notice of failure to change your address, and subsequent thereto the Court had appointed new counsel for you. That counsel will be representing you. Attorney Graham will be representing you. In this case the Court has not made the determination that you are permitted to proceed pro se with respect to this charge and this specification, and I think you understand that; correct?

THE DEFENDANT: Your Honor, actually I do want to proceed pro se with this case.

THE COURT: Why?

THE DEFENDANT: I mean I believe it would be - - I will be well within my rights, wouldn't I?

THE COURT: No, you wouldn't be.

THE DEFENDANT: I wouldn't be?

THE COURT: No.

THE DEFENDANT: I'm not by law permitted to represent myself?

THE COURT: Well, you are if you can show me good cause as to why I should allow you to proceed pro se after I have given you a new counsel that you requested, and we are not five minutes after the trial should have started and you were just bringing this to my attention. So tell me why I should allow you to go pro se.

THE DEFENDANT: The last time I was in here was Friday. I had written you a letter, Your Honor. In that letter I was asking to have a pretrial conference with you concerning evidence and things of that nature.

When I was brought into the courtroom, neither you nor the prosecution were present at that time. I was then whisked off in the back room to have [a] conference with my attorney over evidence that I felt that he and I shouldn't discuss between us and not in an open courtroom or microphone and, you know.

So and then I asked my attorney, I said, Is the Judge present? Is the Prosecutor present? And he told me no. On the way out of the courtroom you were present.

THE COURT: Well, let me clarify that the Court set the matter for a pretrial at your request. The Court met with your appointed counsel and with the State of Ohio, discussed matters for this trial and gave your counsel the opportunity to discuss matters with you in private.

* * *

> The fact that there is nothing put on the record does not meant that the State and the Court were not available. There was just nothing to put on the record, and the Court had other matters to hear subsequent to providing you ample opportunity to discuss things with your counsel. That was the purpose of Friday. That's what happened on Friday. The Court will make that known for the record.
>
> The Court did discuss with counsel who indicated that he spoke with you and indicated that his Motion in Limine with respect to the evidence and acts involved were or was sufficient to cover the concerns that you had with respect to the evidence that was presented by your handwritten motion.
>
> Now, the Court also finds that at this time at this late stage you have not shown good cause as to why the Court should allow you to go pro se or allow alternative counsel to be present.
>
> The Court has made every accommodation for you, Mr. Hopson, to make sure that your rights are protected, and the Court will deny your motion at this time to proceed pro se.

(Doc. 20, at 62-66).

The appellate court concluded Petitioner's "request the morning of trial to represent himself in the felonious assault case was not timely made". 2015 WL 4270317, at *8. Petitioner specifically argues that "timeliness was not the trial court's concern regarding the matter", when "[t]he trial court clearly stated that Petitioner could represent himself if he could 'show good cause'." (Doc. 13, at 23). Although Petitioner is correct that the trial court used language regarding "good cause", as the concurring appellate opinion pointed out, the trial court *also* used language based on timeliness:

> {¶ 48} I write separately, in part, to note my disagreement with the trial court's assertion a defendant must show "good cause" to represent himself. A defendant has a constitutional right to represent himself provided he has knowingly, intelligently and voluntarily waived his right to counsel. I know of no case law mandating a defendant must have "good cause" to exercise his right to self-representation.
>
> {¶ 49} I also write separately to address the timeliness of Appellant's attempt to exercise his right of self-representation. The trial court specifically noted Appellant's request was made "five minutes after the trial should have started and you [Appellant] were just bringing this to my attention." Later, the trial court noted

34

the request was made "at this late stage." While never mentioning the word "untimely," it is clear, in addition to finding no good cause existed, the trial court found the request untimely.

*Hopson*, 2015 WL 4270317, at *11-12 (concurring opinion). The undersigned finds the state appellate court decision—finding that Petitioner's self-representation rights were not violated— was not an unreasonable determination of the facts, nor an unreasonable application of *Faretta* and its progeny. There are time limitations on when a defendant can request self-representation, and the appellate court's conclusion that denial of the right on that basis under the circumstances here was not an unreasonable application of clearly established federal law. *See Hill*, 792 F.3d at 678. Therefore, the undersigned recommends the Court deny Ground Two as meritless.

*Ground Four: Sufficiency of the Evidence*

Next, Petitioner argues his conviction was not supported by sufficient evidence, in "a clear violation of the United States Constitution Amendments V and XIV[.]" (Doc. 1, at 20). Respondent contends this ground lacks merit. For the reasons discussed below, the undersigned recommends Ground Four be denied.

The standard for a sufficiency of evidence claim is: "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such

35

conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326. In applying this standard, the federal court is bound by the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16. Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Due process is satisfied as long as such evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008).

Further, it is important to note the double deference applicable; first, the deference accorded to the trier of fact's verdict by *Jackson*, and second, the deference to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008); *see also Brown*, 567 F.3d at 205 (finding even if a rational trier of fact could not have found petitioner guilty, the habeas court must defer to the state appellate court's sufficiency determination so long as it is reasonable). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)); *see also Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("Because rational

people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.").

The state court addressed Petitioner's sufficiency and weight-of-the-evidence claims together on direct appeal:

{¶ 31} In his second assignment of error, Appellant challenges his conviction as being against the manifest weight and sufficiency of the evidence.

{¶ 32} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.; see also McDaniel v. Brown,* 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

{¶ 33} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St .3d 89, 684 N.E.2d 668, 1997–Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) at 1594.

{¶ 34} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins, supra,* 78 Ohio St.3d at 387, *quoting State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is

reserved for " 'the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.
> * * *
> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶ 35} Appellant was convicted of felonious assault, in violation of R.C. 2903.11(A)(1), which provides:

> (A) No person shall knowingly do either of the following:
> (1) Cause serious physical harm to another or to another's unborn;

{¶ 36} Appellant contends the State failed to meet its burden of establishing he caused the harm suffered by Shawn Jalloh. Appellant and his brother testified Appellant never struck Jalloh, and her injuries were caused by a lamp, which fell on her when she kicked the bedside table. However, Jalloh testified Appellant physically assaulted her, and during the attack, he hit her with a lamp, which caused a large gash on her forehead. Officer Gambs testified he was dispatched to Jalloh's residence where he found her with a bleeding gash on her forehead. After some hesitation, Jalloh told the officer Appellant had assaulted her.

{¶ 37} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Appellant committed the crime. We hold, therefore, that the state met its burden of production regarding each element of the crime of felonious assault, and, accordingly, there was sufficient evidence to support Appellant's conviction

{¶ 38} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries,* 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction,* 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court

has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' "*Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012–Ohio–2179, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g ., In re Brown,* 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass,* 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

{¶ 39} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008–Ohio–6635, ¶ 31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004–Ohio–3395, 813 N.E.2d 964 (2nd Dist.2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, *citing State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist.1999).

{¶ 40} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter,* 131 Ohio St.3d 67, 2011–Ohio–6524, 960 N.E.2d 955, ¶ 118. *Accord, Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger,* 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed .2d 646 (1983).

{¶ 41} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens,* 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, citing *State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist.1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

{¶ 42} We find that this is not an " 'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Appellant of the charge.

{¶ 43} Based upon the foregoing and the entire record in this matter, we find Appellant's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Appellant and his witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker,* 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Appellant's guilt.

{¶ 44} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime beyond a reasonable doubt.

{¶ 45} Appellant's second assignment of error is overruled.

*Hopson*, 2015 WL 4270317 at *8-11.

Petitioner has not shown this decision to be contrary to, or involving an unreasonable application of, *Jackson v. Virginia*. As the state appellate court pointed out, the conviction was supported by: 1) the victim's testimony that Petitioner hit her with a lamp, causing a gash on her forehead; and 2) Officer Gambs' testimony that he responded to the victim's residence, where he found saw the forehead gash, and the victim told him Petitioner had assaulted her. *Id.* at *9. The appellate court's factual findings are presumed correct unless rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), something Petitioner has not done here. Petitioner, rather, points to the contrary testimony—his own, and that of Parnell Stokes—presented at trial. *See* Doc. 1, at 19-20; Doc. 13, at 31-38. And Petitioner contends, the prosecution "total[ly] fail[ed] to contradict Petitioner's claim that he was never in possession of the lamp in question during the time of the incident." (Doc. 13, at 36). But these factual conflicts are for a jury, not a reviewing habeas court, to determine. *Jackson*, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of

40

historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

Applying the *Jackson* standard to these facts, a rational trier of fact could have reasonably found Petitioner guilty beyond a reasonable doubt of felonious assault in violation of Ohio Revised Code § 2903.11(A)(1)—that is, that he knowingly caused serious physical harm to another. And, under the double deference applicable, the state court's decision so-holding was not an unreasonable application of *Jackson*. The undersigned therefore recommends the Court find Ground Four meritless.

**CONCLUSION AND RECOMMENDATION**

Following review, and for the reasons stated above, the undersigned recommends the Petition be denied in its entirety. Grounds One and Three are procedurally defaulted, and Grounds Two and Four are meritless.

 s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).